IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BAYOU CITY WATERKEEPER, § | |
| § | |
| Plaintiff, § | |
| v. § | CIVIL ACTION NO. |
| § | |
| CITY OF HOUSTON, § | |
| § | |
| Defendant. § | |

Plaintiff Bayou City Waterkeeper's Original Complaint

I.   Introduction

1. Bayou City Waterkeeper ("Waterkeeper") brings this citizen suit against the City of Houston (the "City") under the Federal Water Pollution Control Act, 33 U.S.C. § 1251, et seq., also known as the Clean Water Act ("CWA" or "Act"). Waterkeeper asks this Court to enter declaratory and injunctive relief, civil penalties, and other relief to correct the City's recurring, unauthorized discharges, sanitary sewer overflows ("SSOs"), and bypasses of untreated wastewater into area waterways.

2. Over the last five years, the City has self-reported more than 9,300 SSOs and bypasses at its municipally-owned wastewater treatment plants and collection systems, which have spilled sewage-contaminated water into area waterways. Sewage is a pollutant under the CWA, and untreated wastewater discharges may have a significant impact on water quality and human health. Each of the City's recurring, unauthorized wastewater discharges, SSOs, and bypasses violates the CWA, as well as the terms of the City's Texas Pollutant Discharge Elimination System ("TPDES") permits. The City's discharges are continuing and likely to recur.

3. The City has not taken adequate steps to address and prevent its recurring wastewater discharges, SSOs, and bypasses, and neither the U.S. Environmental Protection Agency ("EPA")

1

nor the State of Texas has diligently prosecuted the City's legal violations. The City last entered a Compliance Agreement ("CA") with the Texas Commission on Environmental Quality ("TCEQ") in 2005 to address some of its longstanding wastewater disposal problems. Under that CA and pursuant to the "Wastewater Collection System Sanitary Sewer Overflow Plan and Schedule," the City reportedly upgraded, cleaned, and renewed some of its sewer pipes and infrastructure. According to the City, all work under the CA was completed by June 2016. As evidenced by the City's continuing legal violations numbering in the thousands, the work undertaken under the 2005 CA fell far short of resolving the City's problem.

4. As part of its mission, Waterkeeper is committed to promoting regional water quality by identifying and targeting sources of pollution, including the raw, untreated sewage that enters the Houston area's creeks, rivers, bays, estuaries, other waterways, and surrounding land through the City's wastewater treatment and collection facilities. Waterkeeper's members and supporters live near and regularly use and enjoy Houston's creeks, rivers, bays, estuaries, other waterways, and surrounding land for recreational and aesthetic purposes, including those that are the subject of this complaint. The City's unauthorized discharges have had a detrimental effect on, and pose an ongoing threat to, water quality and public health in the Houston area and have caused significant damage to the waters that Waterkeeper's members use and enjoy.

5. In an effort to redress the City's long-standing, ongoing problem, Waterkeeper brings this citizen suit against the City under the CWA. *See* 33 U.S.C. § 1365(a)(1).

## II.    Jurisdiction & Venue

6. This Court has subject matter jurisdiction over this action under 28 U.S.C § 1331 (federal question) and 33 U.S.C. § 1365(a) (CWA citizen suit to enforce effluent standards or limitations). The relief requested is authorized by 28 U.S.C. §§ 2201 and 2202 (further necessary or proper

relief based on a declaratory judgment), 33 U.S.C. §§ 1319(b), 1365(a) (injunctive relief), and 33 U.S.C. §§ 1319(d), 1365(a) (civil penalties).

7. Venue is proper under 28 U.S.C. § 1391(b)(1), (2) and 33 U.S.C. § 1365(c) because the City, its wastewater treatment and collection systems, and its unauthorized discharges all are located or occurred in the Houston Division of the Southern District of Texas.

### III. Notice

8. Waterkeeper has complied with the CWA's statutory notice requirements. *See* 33 U.S.C. § 1365(b)(1)(A). On July 23, 2018, in a letter sent by certified mail to Sylvester Turner, the City's mayor, Waterkeeper gave the City notice of the violations identified in this complaint and of its intent to file suit after sixty days should those violations continue. A true and correct copy of the notice letter, with documentation of its postmark and receipt, is attached as **Exhibit 1**.

9. Waterkeeper also mailed a copy of its notice letter by certified mail to the Administrator of the EPA, the Regional Administrator for EPA Region 6, the State of Texas through the Texas Attorney General, and the Executive Director of Texas Commission on Environmental Quality ("TCEQ").

10. Sixty days have passed since Waterkeeper served the City and federal and state agencies with notice of its intent to sue for the violations described in this complaint.

11. Neither the EPA nor the State has commenced or is diligently prosecuting an action to redress the violations described in Waterkeeper's notice letter and alleged in this complaint.

12. The violations identified in the notice letter are continuing at this time and are reasonably likely to continue in the future.

IV. Parties

**Plaintiff Bayou City Waterkeeper**

13. The plaintiff Bayou City Waterkeeper is a 501(c)(3) non-profit organization incorporated in the State of Texas that was founded in 2001 as Galveston Baykeeper and has its headquarters in Houston, Texas. Part of Waterkeeper's mission is to promote local water quality by identifying and targeting sources of pollution, including the raw untreated sewage that enters the Houston area's creeks, rivers, bays, estuaries, other waterways, and surrounding land through the City's wastewater treatment facilities and collection systems.

14. Waterkeeper is a licensed member of the Waterkeeper Alliance, which connects and supports local Waterkeeper programs to champion fishable, swimmable, and drinkable waterways worldwide.

15. Waterkeeper is a membership-based organization and has approximately 275 members who are residents of the City of Houston. Waterkeeper's members, supporters, and staff (collectively "members") regularly use and enjoy the waters in and around Houston, including the waters affected by the violations at issue in this complaint. Waterkeeper's members engage in outdoor recreation, such as canoeing, hiking, walking, fishing, birdwatching, picnicking, and photography and other recreational, aesthetic, educational, environmental, scientific, and vocational activities of interest near and in the waterways, areas, and watersheds comprising the Lower Galveston Bay watershed in the Houston area, such as Armand Bayou, Addicks and Barker Reservoirs, Brays Bayou, Buffalo Bayou, Carpenters Bayou, Cedar Bayou, Clear Creek, Cypress Creek, Greens Bayou, Hunting Bayou, Little Cypress Creek, the San Jacinto River, Sims Bayou, Vince Bayou, and White Oak Bayou (hereinafter, "Lower Galveston Bay Watershed"). Waterkeeper's members regularly use and enjoy areas and waterways in the Lower Galveston Bay Watershed and plan to continue to use and enjoy them for recreational, educational, environmental,

scientific, and vocational purposes in the future and have specific and near-term plans to return to use them for the uses described above.

16. By regularly and repeatedly discharging untreated wastewater into and near area waterways, the City has diminished Waterkeeper members' ability to use and enjoy these waterways for a variety of activities in the areas adjacent to the discharges as well as areas upstream and downstream from the discharges that are ecologically and hydrologically connected to areas most directly affected by the City's discharges.

17. Ongoing pollution from the City also deters Waterkeeper members from using and enjoying such waters as they otherwise would because of reasonable and scientifically-based concerns about the adverse effects of the City's discharges. The City's violations cause a reasonable fear of pollution in the City's waterways and Lower Galveston Bay Watershed that reduces the ability of Waterkeeper's members to recreate in the waterways. The City's violations also adversely impact water quality which harms the ability of Waterkeeper's members to observe and otherwise enjoy the aquatic, bird, and other wildlife species.

18. Waterkeeper has had to dedicate its limited organizational resources to identifying and tracking the City's actions that do not comply with the CWA. The City's unpermitted discharges have directly injured Waterkeeper's organizational interests in promoting water quality in local waterways.

19. For these reasons, both Waterkeeper and its members have aesthetic, recreational, educational, environmental, scientific, and vocational interests that have been, are being, and will continue to be adversely affected and irreparably harmed by the City's ongoing CWA violations. These actual and potential injuries have been, are being, and will continue to be caused by the

illegal discharges from the City's wastewater treatment and collection systems into waters of the United States. Waterkeeper therefore is suing on behalf of itself and its members.

20. The relief sought by this complaint will redress the harms to Waterkeeper and its members caused by the City's unlawful discharges. The injuries are unlikely to be redressed except by an order from this Court requiring the City to take immediate and substantial action to stop the unpermitted discharges and flow of pollutants into local waterways and to comply with other relief that this Court deems necessary.

21. If successful, this action also will result in civil penalties that will deter future violations that would threaten Waterkeeper's and its members' use and enjoyment of the Lower Galveston Bay Watershed, including areas and waters adjacent to, upstream, and downstream from the locations where the City's violations have occurred.

22. Waterkeeper and its members suffer actual, concrete injuries that are fairly traceable to the City's violations and are redressable by this Court. Waterkeeper has no other adequate remedy at law.

23. Waterkeeper is located at 2010 N. Loop W., Suite 275, Houston, Texas 77018.

**Defendant City of Houston**

24. The defendant City of Houston owns and operates the sanitary sewer treatment facilities and collection system that are the source of the violations described in this complaint. The City encompasses much of the Lower Galveston Bay Watershed, into which the City's untreated discharges flow.

25. The City of Houston is a municipality in the State of Texas and as defined under CWA section 502(4), 33 U.S.C. § 1362(4). The City therefore is a "person" under CWA section 502(5),

33 U.S.C. § 1362(5) and subject to citizen suit enforcement under the CWA. *See* 33 U.S.C. § 1365(a)(1).

26. The City's mayor is Sylvester Turner, whose mailing address is P.O. Box 1562, Houston, TX 77251.

V. Legal Background

**The Clean Water Act**

27. Congress enacted the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve this goal, the Act prohibits "the discharge of any pollutant" into navigable waters, except as authorized by the CWA. 33 U.S.C. § 1311(a).

28. The CWA establishes the National Pollutant Discharge Elimination System ("NPDES") under which the Administrator of the EPA or an authorized State can issue NPDES permits, which allow the lawful discharge of pollutants subject to certain conditions. 33 U.S.C. § 1342. In Texas, the TCEQ has the authority to issue NPDES permits through the TPDES permitting program.

29. TPDES permits impose limitations on the discharge of pollutants, and establish related monitoring and reporting requirements, in order to improve the cleanliness and safety of the Nation's waters. Each violation of a TPDES permit violates the CWA and is grounds for enforcement action. 33 U.S.C. §§ 1311(a), 1365(f).

30. Each "discharge of any pollutant" that is not authorized by a permit also violates the CWA. 33 U.S.C. §§ 1311(a), 1365(f). The "discharge of any pollutant" means "any addition of any pollutant to navigable waters from any point source…" 33 U.S.C. § 1362(1). The term "pollutant" includes "sewage." 33 U.S.C. § 1362(6). The term "point source" includes "any discernible, confined and discrete conveyance" from which pollutants may be discharged, including "any pipe, ditch, channel, tunnel, conduit, well [and] discrete fissure." 33 U.S.C. § 1362(14). The term

7

"navigable waters" means waters of the United States, including the territorial seas. 33 U.S.C. § 1362(7). Thus, under the Act, unpermitted discharges of sewage-contaminated wastewater from collection system pipes, channels, pumps, wells, and other conveyances into navigable waters are unlawful and subject to an enforcement action.

31. The holder of a TPDES permit is subject to both federal and state enforcement action for failure to comply with the limitations imposed in the permit. 33 U.S.C. §§ 1319, 1342.

### Citizen Enforcement

32. The CWA authorizes any citizen to file a civil action to enforce an effluent standard in an NPDES (or TPDES) permit, subject to certain limitations. 33 U.S.C. § 1365(a), (b). Subsection (a) of the citizen suit provision, entitled "Authorization; jurisdiction," instructs: "Except as provided in subsection (b) of this section..., any citizen may commence a civil action on his own behalf... against any person... who is alleged to be in violation of... an effluent standard or limitation under this chapter." 33 U.S.C. § 1365(a)(1).

33. The CWA defines the term "an effluent standard or limitation under this chapter" to mean, among other things, "a permit or condition thereof issued under, which is in effect under [section 402 of the CWA]." 33 U.S.C. § 1365(f).

34. CWA section 505, 33 U.S.C. § 1365, empowers citizens to seek remedies for unpermitted discharges violating Section 301 of the CWA, 33 U.S.C. § 1311, and for violations of NPDES permit conditions. This section also authorizes citizens to seek injunctive relief.

35. Each separate violation of the CWA subjects the violator to a penalty of up to $37,500 per day per violation for all violations occurring on or before November 1, 2015, pursuant to sections 309(d) and 505(a) of the CWA. 33 U.S.C. §§ 1319(d), 1365(a), and 40 C.F.R. § 19.4 (2009) (Adjustment of Civil Monetary Penalties for Inflation). Violations occurring after November 2,

2015 are subject to escalating penalties of up to $53,484 per violation occurring during 2018, as provided by 33 U.S.C. §§ 1319(d) and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. pt. 19.

36. Section 505(d) of the CWA, 33 U.S.C. § 1365(d), allows prevailing or substantially prevailing parties to recover litigation costs, including attorney fees and expert witness fees.

37. The CWA subjects citizen suits to two limitations. 33 U.S.C. § 1365(b). First, sixty days before filing a citizen suit, the citizen must give notice of the alleged violation to the alleged violator, the EPA, and the State in which the alleged violation occurs. § 1365(b)(1)(A). Sixty days after giving notice, citizens may bring an action in federal district court to enforce any ongoing violations of the CWA. The Supreme Court has stated that "the purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987). Furthermore, "[t]he requirement that notice be given to the responsible officials highlights their primary role in enforcing the Act compared to the supplementary position of the citizen." *Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392, 396 (5th Cir. 1985).

38. Second, the Act bars a citizen suit if the EPA or State "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order." 33 U.S.C. § 1365(b)(1)(B). A preexisting consent decree will not bar a citizen suit where a defendants' legal violations continue even after entry of that consent decree. *See La. Envtl. Action Network v. City of Baton Rouge*, 677 F.3d 737, 750 (5th Cir. 2012).

39. Where, as here, the EPA or State fails to act within the sixty-day notice period, a citizen suit is appropriate. *See Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008) ("The citizen-suit provision is a critical component of the CWA's enforcement scheme, as it 'permit[s] citizens to abate pollution when the government cannot or will not command compliance.'") (alteration in original).

## VI. Facts

40. Waterkeeper fully incorporates **Exhibit 1**¸ including all attachments to Exhibit 1, into this complaint.

41. The Houston area includes several major watersheds through which countless channels, rivers, creeks, and bayous drain to the Lower Galveston Bay Watershed. Residents depend on the area's waterways and their surrounding areas for recreational and aesthetic activities, including swimming, boating, fishing, picnicking, walking, and wildlife observation, for scientific and educational activities, and for the vocational and economic benefits of commercial and sport fishing and tourism.

42. The City of Houston operates 39 wastewater facilities around the Houston area. Its city-wide system comprises 6,100 miles of sewer lines and 383 lift stations that can move an average of 250 million gallons of wastewater per day to local plants for treatment before being discharged into area bayous and lakes.[1] Like many municipal wastewater systems, Houston's system is designed to collect, treat, and then discharge wastewater to waters of the United States. Each facility is governed by the terms of its own TPDES permit.[2]

---

[1] City of Houston, Wastewater Operations, https://www.publicworks.houstontx.gov/pud/wwops.html (last visited Sept. 19, 2018).
[2] The permits at issue in this lawsuit are TPDES permit nos. 10495-002; 10495-003; 10495-009; 10495-010; 10495-016; 10495-023; 10495-030; 10495-037; 10495-050; 10495-065; 10495-075; 10495-076; 10495-077; 10495-078; 10495-079; 10495-090; 10495-095; 10495-099; 10495-100; 10495-101; 10495-109; 10495-110; 10495-111; 10495-112; 10495-116; 10495-119; 10495-122; 10495-126; 10495-133; 10495-135; 10495-136; 10495-139; 10495-142;

43. Each of the City's TPDES permits require that the City operate and maintain its wastewater treatment facilities and all of its systems of collection, treatment, and disposal to prevent unauthorized discharges of untreated wastewater, including SSOs and bypasses.

44. The City's TPDES permits each also prohibit a bypass of the treatment system, with exceptions not relevant here. A bypass is an intentional discharge of wastewater that has not been fully treated.

45. The City's permits require the City to self-report any unauthorized discharges. By complying with the self-reporting requirement, however, the City does not evade the CWA's prohibition on unauthorized discharges. Rather, each self-reported discharge represents an independent, potential violation of the CWA by the City.

46. From July 24, 2013 to June 7, 2018, the City self-reported over 9,300 discharges, bypasses, and SSOs from its wastewater systems. The attachments to **Exhibit 1** detail these violations.[3] This data confirms that the City regularly violates the CWA and the terms of its TPDES permits.

47. The data documented in the attachments to **Exhibit 1** also confirms that the City's discharges, SSOs, and bypasses have occurred repeatedly, with incidents in nearly every month for which data was provided in the past five years. The City's ongoing and continuous violations show that the City has not operated and maintained its wastewater collection system to prevent the unauthorized discharge of untreated wastewater in violation of the CWA and its TPDES permits.

---

10495-146; 10495-148; 10495-149; 10495-150; 10495-151. As explained in footnote 2 below, potential violations associated with permit no. 14650-001 are not included in this complaint.

[3] This complaint excludes three important sets of data: (1) 53 known SSOs that occurred between August 26 and September 4, 2017 that Waterkeeper determined are potentially associated with Hurricane Harvey; (2) an unknown number of SSOs occurring after November 30, 2015 and before February 13, 2016 because this data is not available from the TCEQ due to what seems to be the TCEQ's failure to maintain records during a change in format of reporting and recordkeeping databases; (3) an unknown number of SSOs associated with Houston's West Lake Houston Wastewater Treatment Facility (Permit No. 14650-001) because this data was not made available to Waterkeeper as of the date of this notice letter. Waterkeeper reserves the right to amend this complaint to include violations if additional data reveals further CWA violations by the City.

48. The City's permit violations are not geographically isolated and occur across the City. The map on page 6 of **Exhibit 1** depicts the locations of the City's wastewater treatment facilities in the Houston area. The table on page 5 of **Exhibit 1**, and reproduced below, shows that the SSOs and bypasses are associated with all of the City's wastewater treatment facilities addressed in this complaint:

**Figure 1: Approximate Number of Unauthorized SSO and Bypass Discharges from City of Houston wastewater treatment plants occurring from July 2013 to June 2018.**

|    | WWTP | TCEQ Permit | Number of Discharges |
|----|------|-------------|---------------------:|
| 1  | Sims Bayou | 10495-002 | 1,601 |
| 2  | Almeda Sims | 10495-003 | 926 |
| 3  | Chocolate Bayou | 10495-009 | 238 |
| 4  | Clinton Park | 10495-010 | 23 |
| 5  | FWSD #23 | 10495-016 | 499 |
| 6  | Homestead | 10495-023 | 82 |
| 7  | West District | 10495-030 | 294 |
| 8  | Southwest | 10495-037 | 886 |
| 9  | WCID #47 | 10495-050 | 89 |
| 10 | Easthaven | 10495-065 | 44 |
| 11 | Sagemont | 10495-075 | 86 |
| 12 | Northwest | 10495-076 | 427 |
| 13 | Northeast | 10495-077 | 224 |
| 14 | Intercontinental Airport | 10495-078 | 3 |
| 15 | Southeast | 10495-079 | 56 |
| 16 | 69th Street | 10495-090 | 2,330 |
| 17 | WCID #111 | 10495-095 | 64 |
| 18 | White Oak | 10495-099 | 81 |
| 19 | Northgate | 10495-100 | 50 |
| 20 | Imperial Valley | 10495-101 | 87 |
| 21 | Turkey Creek | 10495-109 | 121 |
| 22 | Greenridge | 10495-110 | 86 |
| 23 | Beltway | 10495-111 | 226 |
| 24 | Cedar Bayou | 10495-112 | 16 |
| 25 | Upper Brays | 10495-116 | 101 |
| 26 | Keegans Bayou | 10495-119 | 308 |
| 27 | Northbelt | 10495-122 | 37 |
| 28 | Willowbrook | 10495-126 | 11 |
| 29 | HCMUD #203 | 10495-133 | 122 |
| 30 | Park Ten | 10495-135 | 7 |
| 31 | Metro Central | 10495-136 | 37 |
| 32 | Westway | 10495-139 | 13 |
| 33 | Kingwood West | 10495-142 | 2 |
| 34 | Kingwood Central | 10495-146 | 26 |
| 35 | Tidwell Timbers | 10495-148 | 12 |
| 36 | Forest Cove | 10495-149 | 8 |
| 37 | WCID #76 | 10495-150 | 42 |
| 38 | Willow Run | 10495-151 | 54 |
|    |      | **TOTAL:** | **9,319** |

49. The City's unlawful SSOs and bypasses contribute pollutants to waters of the United States, including those in the Lower Galveston Bay Watershed. The City's untreated wastewater discharges present a serious threat to water quality, human health, and the biological integrity of plant life and animal organisms. Nearly every identified stream segment that TCEQ monitors within the City's wastewater treatment plant service area is recognized by TCEQ and EPA as impaired by bacteria. When a water body is recognized as impaired, it exceeds identified pollution criteria and cannot fully support its designated beneficial uses, such as those in the Houston area: recreation, aquatic life, fish consumption, and public water supply.

50. To date, the City's efforts to improve its wastewater collection system have not sufficed to prevent recurring SSOs and bypasses. The City entered a Compliance Agreement with the TCEQ in 2005 to address some of its longstanding wastewater problems. Under that CA, the City reportedly upgraded, cleaned, and renewed some of its sewer pipes and infrastructure. According to the City, all work under the CA was completed by June 2016. Similarly, in 1997, the City completed work in constructing relief sewers, sewer rehabilitation, and upgrading or replacing lift stations through the "Greater Houston Wastewater Program" or "GHWP." As evidenced by the City's continuing legal violations numbering in the thousands, the work undertaken under the 2005 CA and the 1997 GHWP fell far short of resolving the City's problem.

51. The City's continuing and unauthorized discharges, SSOs, and bypasses violate the CWA and the terms of the City's TPDES permits and have injured and will continue to injure Waterkeeper and its members. Waterkeeper's members use and enjoy areas and waterways in the Lower Galveston Bay Watershed for recreational activities, including canoeing, hiking, walking, fishing, birdwatching, photography, picnicking, and nature watching. The City's discharges of

pollutants into the Lower Galveston Bay Watershed diminishes Waterkeeper's and its members' enjoyment of these activities and waters.

## VII. First Claim for Relief
(Unauthorized discharges)

52. Waterkeeper incorporates each and every allegation set forth above.

53. The Lower Galveston Bay Watershed encompass waters of the United States or waterways that have a significant nexus to waters of the United States and thus are navigable waters as defined by the CWA and controlling authority. *See* 33 U.S.C. § 1362(7); 40 C.F.R. § 122.2.

54. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant from any point source to waters of the United States, except for discharges in compliance with a NPDES (or TPDES) permit issued pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342. Untreated wastewater is a pollutant that cannot be discharged without a permit under the Clean Water Act. *See* 33 U.S.C. § 1362(6).

55. The City's TPDES permits only authorize the City to discharge wastewater that has been treated according to the permits' specific conditions and at the location of an authorized outfall. The City's permits expressly prohibit unauthorized discharges, including SSOs and intentional bypasses from the wastewater collection system.

56. The City's treatment and collection system consists of pipes and other manmade conveyances and is a point source under the CWA. *See* 33 U.S.C. § 1362(14).

57. As described in this complaint and detailed in the attachments to **Exhibit 1**, since at least July 24, 2013, the City has discharged wastewater from its collection systems on more than 9,300 separate occasions. Because the City's TPDES permits do not authorize these discharges, each discharge violates the CWA.

58. As owner and operator of the collection system, the City is responsible for the CWA violations alleged in this complaint and **Exhibit 1** that have occurred from July 24, 2013 to the present.

59. Each and every one of the City's unauthorized wastewater discharges into waters of the United States amounts to a separate and distinct violation of Section 301(a), 33 U.S.C. § 1311(a), and Section 402, 33 U.S.C. § 1342, of the CWA.

60. Neither the EPA nor the State of Texas is diligently prosecuting these SSOs and bypasses. The State's 2005 CA has no effect on Waterkeeper's right to bring this suit.

61. The City's SSOs and bypasses constitute ongoing violations of the CWA. Based on the pattern of the City's past SSOs and bypasses, the continuation of the SSOs and bypasses from the time of the sixty-day notice letter to the present, and the City's failure to adequately and completely repair, replace, or otherwise remediate the infrastructure associated with its wastewater collection system that has caused the SSOs and bypasses, it is reasonably likely that the City's SSOs and bypasses will continue with the same frequency. The City's violations are continuing at the time of the filing of this complaint and will continue to occur on each occasion the City discharges SSOs and bypasses in violation of the CWA's requirements.

62. The City's continuing commission of the acts and omissions alleged in this complaint irreparably harms the waters of the United States in the Houston area, as well as Waterkeeper and its members, for which harm they have no adequate remedy at law.

VIII. Second Claim for Relief
(Failure to comply with the conditions of the TPDES Permit)

63. Waterkeeper incorporates each and every allegation set forth above.

64. Each of the City's 38 TPDES permits that are the subject of this action contain language that requires the City to operate and maintain its wastewater treatment facilities and all of its

systems of collection, treatment, and disposal to prevent unauthorized discharges of untreated wastewater, including SSOs and bypasses.

65. As described in this complaint and detailed in the attachments to **Exhibit 1**, since July 24, 2013, the City has continuously failed to operate and maintain its wastewater treatment facilities and all of its systems of collection, treatment, and disposal to prevent unauthorized discharges of untreated wastewater, including SSOs and bypasses. The City therefore has failed to comply with its TPDES permits conditions.

66. As owner and operator of the collection system, the City is responsible for violations of the CWA alleged in this complaint and **Exhibit 1** that have occurred from July 24, 2013 to the present.

67. Each and every one of the City's unauthorized wastewater discharges amounts to a separate and distinct violation of its TPDES permits.

68. Neither the EPA nor the State of Texas is diligently prosecuting these SSOs and bypasses. The State's 2005 CA has no effect on Waterkeeper's right to bring this suit.

69. The City's SSOs and bypasses constitute ongoing violations of its TPDES permit conditions.

70. Because the problems at the City's facilities and in the City's collection systems have not been corrected at this time, the City's violations are at least reasonably likely to continue in the future in the absence of the requested relief.

71. The City's continuing commission of the acts and omissions alleged in this complaint irreparably harms the waters of the United States in the Houston area, as well as Waterkeeper and its members, for which harm they have no adequate remedy at law.

### IX. Prayer for Relief

72. Bayou City Waterkeeper respectfully asks this Court to:

73. Issue a declaratory judgment stating that the City of Houston has violated and is continuing to violate the Clean Water Act and the conditions of its TPDES permits with its recurring unpermitted discharges of wastewater into waters of the United States;

74. Grant appropriate injunctive relief to ensure that the City of Houston prevents the recurring discharge of untreated wastewater into waters of the United States and addresses the environmental effects of the recurring discharges on these waterbodies;

75. Retain jurisdiction over this matter until such time as the City of Houston has come into compliance with the prohibitions, terms, and conditions of the CWA and the injunctive relief ordered by this Court;

76. Assess civil penalties against the City of Houston of up to $37,500 per day for violations occurring on or before November 1, 2015. Violations occurring after November 2, 2015 are subject to escalating penalties of up to $53,484 per violation occurring during 2018, as provided by 33 U.S.C. §§ 1319(d) and 1365(a), and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. pt. 19;

77. Award Bayou City Waterkeeper its costs, including reasonable attorney fees and expert witness fees, as authorized under the CWA. 33 U.S.C. § 1365(d); and

78. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted on September 21, 2018.

>By: /s/ David Frederick
>David Frederick
>Attorney-in-charge
>Texas Bar No. 07412300
>Eric Allmon, of counsel
>Texas Bar No. 24031819
>Lauren Ice, of counsel
>Texas Bar No. 24092560

Frederick, Perales, Allmon & Rockwell, P.C.
1206 San Antonio St.
Austin, Texas 78701
Tel: (512) 469-6000
Fax: (512) 482-9346
dof@lf-lawfirm.com
eallmon@lf-lawfirm.com
lauren@lf-lawfirm.com
*Attorneys for Bayou City Waterkeeper*

Kristen Schlemmer, of counsel
Texas Bar No. 24075029
S.D. Tex. Bar No. 2078411
Bayou City Waterkeeper
2010 N. Loop West, Suite 275
Houston, TX 77018
Tel: (281) 901-0182
kristen@bayoucitywaterkeeper.org
*Attorney for Bayou City Waterkeeper*

## **EXHIBITS**

Exhibit 1 – Plaintiff Waterkeeper's Notice of Intent to Sue Letter (July 23, 2018) with attachments