IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BAYOU CITY WATERKEEPER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:18-CV-3369 |
| v. | § | JUDGE ANDREW S. HANEN |
| | § | |
| CITY OF HOUSTON, | § | |
| | § | |
| Defendant. | § | |
| | § | |

Plaintiff Bayou City Waterkeeper's Response to Defendant City of Houston's
Motion to Stay Discovery

The plaintiff Bayou City Waterkeeper files this response to the City of Houston's Motion to Stay Discovery. (Doc 23). Because the City failed to carry its burden to show good cause for a stay on discovery pending settlement negotiations or the motions to dismiss, Bayou City Waterkeeper asks the Court to deny the City's motion. In the alternative, or under certain circumstances, Bayou City Waterkeeper asks the Court to allow limited discovery.

I.      Introduction

This citizen suit arises under the Clean Water Act. 33 U.S.C. § 1365(a)(1). By its own public admission, the defendant City of Houston has violated its TPDES permits thousands of times over several years by discharging untreated sewage from its wastewater treatment and collection systems. (Amended Complaint, Doc. 10 at ¶¶ 1, 2, 16, 24, 43-44, 47, 49, 53-72). The EPA and State of Texas have known about the problem for years (*id.* at ¶¶ 2, 3, 38, 39, 51), but have not taken corrective action or imposed any penalties on the City since 2005. (*Id.* at ¶¶ 3, 50).

Bayou City Waterkeeper investigated the City's problem and identified more than 9,300 potential legal violations over a five-year period. (*Id.* at ¶¶ 2, 46, 48, 58). Bayou City Waterkeeper

sent the City of Houston a notice of intent to sue identifying each of these violations in detail, and a copy of the notice was sent to the EPA and the State of Texas. (*Id.* at ¶¶ 8-12). Fifty-nine days after receiving Bayou City Waterkeeper's notice, the EPA and State filed an enforcement action, (*see United States of America, et al. v. City of Houston, Texas*, No. 4:18-CV-3368 (S.D. Tex.), ECF No. 1) and concurrently asked the Court to stay all litigation activity for at least 90 days. (*Id.*, ECF No. 2). The Court granted their request for a stay three days later, ordering the parties to file a joint status report every 45 days. (*Id.*, ECF No. 8). The stay remains in place as of the date of this brief. (*Id.*)

The EPA, the State, and the City had been conducting negotiations for years, yet no written results of such negotiations ever materialized before Bayou City Waterkeeper sent its notice letter, and no results materialized since. (Doc. 10 at ¶¶ 2, 3, 38, 39, 50, 51). Likewise, a review of the City's records revealed no discernable improvement in the City's wastewater problem for the previous five years, but instead, that the City's Clean Water Act violations were ongoing and likely to continue absent a meaningful enforcement action. (*See id.* at ¶¶ 12, 20, 61, 70).

On this factual backdrop, Bayou City Waterkeeper filed this action in order to bring about a swift resolution to the City's violations. For similar reasons, Bayou City Waterkeeper intervened in the government's enforcement action. (Case No. 4:18-CV-3368, ECF No. 12 (motion to intervene)). Still, consistent with their years-long, unproductive negotiations, the EPA, State, and City together have refused to include Bayou City Waterkeeper in settlement negotiations. The City now asks for, what would amount to, an indefinite stay on all discovery until settlement negotiations between the EPA and State of Texas are allowed to conclude, as well as a stay on all discovery pending the motion to dismiss.

2

## II.    Statement of the Nature and Stage of the Proceeding

On September 21, 2018, Bayou City Waterkeeper filed its citizen suit (Doc. 1) alleging that the City of Houston has violated the Clean Water Act more than 9,300 times in five years through repeated sanitary sewer overflows, bypasses, and discharges at its wastewater treatment and collection systems. Defendant City of Houston filed a motion to dismiss Bayou City Waterkeeper's citizen suit. (Doc. 7). Bayou City Waterkeeper amended its complaint, and the City filed a motion to dismiss the amended complaint. The motions are fully briefed and ripe for decision.

The EPA and State filed a related action on September 20, 2018 (the "governmental enforcement action"). *See United States of America, et al. v. City of Houston, Texas*, No. 4:18-CV-3368 (S.D. Tex.), ECF No. 1. Bayou City Waterkeeper intervened in the governmental enforcement action. (*Id.*, ECF No. 20) (order granting intervention). On December 10, 2018, Judge Werlein denied Bayou City Waterkeeper's motion to consolidate this citizen suit with the governmental enforcement action. (*Id.*, ECF No. 29). The governmental enforcement action remains stayed pending settlement discussions. (*Id.*, ECF No. 8). Bayou City Waterkeeper has not attempted to lift the stay, but the EPA, the State, and the City have continued to deny it the opportunity to participate in settlement negotiations. At Bayou City Waterkeeper's request, Judge Werlein scheduled a status conference for all parties on the afternoon of February 22, 2019. (*Id.*, ECF No. 28).

In this citizen suit, Magistrate Judge Frances H. Stacy held a scheduling conference on January 24, 2019, at which a scheduling order was entered. (*See* Doc. 22). Judge Stacy encouraged the parties to discuss settlement, and, given the nature of the ongoing settlement negotiations in the related litigation, implored the City to include Bayou City Waterkeeper in those negotiations. Bayou City Waterkeeper has not been included in negotiations, and has not yet served the City

with discovery requests. The City now asks for an indefinite stay of all discovery, including initial

disclosures. (Doc. 23).

### III.  Statement of Issues to be Ruled Upon by the Court

The City's Motion to Stay Discovery presents the Court with two issues:

(1) whether the City has demonstrated good cause for this Court to stay discovery and disclosures until after it rules on the pending motion to dismiss; and

(2) whether the City has demonstrated good cause for this Court to stay discovery and disclosures until after the settlement negotiations in the governmental enforcement action conclude.

A district court has discretion to stay discovery "for good cause shown." Fed. R. Civ. P.

26(c). Good cause may exist if the party seeking the stay demonstrates that "annoyance,

embarrassment, oppression, or undue burden or expense" would result absent the stay. Fed. R. Civ.

P. 26(c). The denial of a motion to stay discovery is reviewed for abuse of discretion. *Fujita v.*

*U.S.,* 416 Fed.Appx. 400, 402.

### IV.  Summary of the Argument

Under Federal Rule of Civil Procedure Rule 26, the presumption is that discovery shall

proceed notwithstanding the filing of a motion to dismiss. *Rio Grande Royalty Co., Inc. v. Energy*

*Transfer Partners, L.P.*, No. H-08-CV-0857, 2008 WL 8465061, *1 (S.D.Tex. Aug. 11,

2008)(Ellison, J.); *U.S. Auto Club*, 2008 WL 2038887 at *1 (even with a pending a dispositive

motion, a stay on discovery is still the exception rather than the rule).

Given the strong presumption that discovery should proceed in accordance with the federal

rules, the burden of overcoming the presumption that discovery proceed lay heavily on the movant.

*Landis v. North American Co.*, 299 U.S. 248, 256 (1936). The movant must provide a particular

and specific demonstration of fact as to why the stay is necessary. *In re Terra Int'l, Inc.*, 134 F.3d

302, 306 (5th Cir. 1998) ("[t]he burden is upon the movant to show the necessity of its issuance,

which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.")

When determining whether to stay proceedings, courts "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254. Even when a motion to dismiss is pending, the court still must balance the harm caused by the delay in discovery against the chance that discovery will not be necessary. *Conquest v. Camber Corp.*, No. 5:13-CV-1108-DAE, 2014 WL 172500 (W.D.Tex. Jan. 13, 2014)(Ezra, J.).

The City now asks for, what would amount to, an indefinite stay on discovery until settlement negotiations between the EPA and State of Texas are allowed to conclude, and a stay on discovery pending the motion to dismiss. The City has failed to demonstrate how any discovery, even initial disclosures, would be unduly burdensome or expensive, any more so than what any party in litigation faces. Nor has the City shown that settlement of Bayou City Waterkeeper's claims are imminent; in fact, because Bayou City Waterkeeper has been kept out of settlement negotiations, any ongoing or imminent negotiations weigh against a stay on discovery here.

In arguing for the stay, the City attempts to reposition itself as the victim of an undue burden, when it is the City whose voluminous and undisputed Clean Water Act violations are the subject of this suit and the related governmental enforcement action. Any delay in resolving this case will only allow the violations to continue causing irreparable injury to Bayou City Waterkeeper and its members, by posing an ongoing threat to water quality and public health in the Houston area, and causing significant damage to the waters that Bayou City Waterkeeper's members use and enjoy. (Doc. 10 at ¶ 4, 17, 19, 63, 72). The potential harm to Bayou City Waterkeeper and its members from delay mitigates in favor of proceeding with discovery.

For these reasons, the Court should exercise its discretion and deny the Motion to Stay Discovery. In the alternative, the Court should allow for limited discovery. Should the Court determine that Bayou City Waterkeeper must overcome a presumption of diligence or heightened deference to the government's prosecution in response to the City's 12(b)(6) motions to dismiss, then discovery on the subject of diligent prosecution would assist the Court in ruling on the motions. Under such circumstances, Bayou City Waterkeeper requests discovery on the issue of diligent prosecution.

## V.    Argument

1.   The general rule is that discovery should proceed notwithstanding a motion to dismiss.

Under Federal Rule of Civil Procedure Rule 26, the presumption is that discovery shall proceed notwithstanding the filing of a motion to dismiss. *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, No. H-08-CV-0857, 2008 WL 8465061, *1 (S.D.Tex. Aug. 11, 2008)(Ellison, J.); *see also U.S. Auto Club*, 2008 WL 2038887 at *1 (a stay on discovery, even pending a dispositive motion, is still the exception rather than the rule). The issuance of a stay is not automatic. *Von Drake v. National Broadcasting Co.*, No. 3-04-CV-0652-R, 2004 WL 1144142 at *1 (N.D.Tex. May 20, 2004)(Kaplan, J.). Had the Rules meant to automatically stay discovery when a motion to dismiss was pending, the Rules would have said so. *See Ford Motor Co. v. U.S. Auto Club, Motoring Division, Inc.*, No. 3-07-CV-2182-L, 2008 WL 2038887 (N.D.Tex. April 24, 2008)(Kaplan, J.).

Although a stay on discovery "*may* be appropriate" where the disposition of a motion to dismiss could preclude the need for discovery altogether (*U.S. ex rel. Gonzalez v. Fresenius Medical Care North America*, 571 F.Supp.2d 766, 768 (W.D. Tex. 2008)(emphasis added)), given the strong presumption that discovery should proceed in accordance with the federal rules, the burden of overcoming the presumption that discovery proceed lay heavily on the movant. *Landis*

6

*v. North American Co.*, 299 U.S. 248, 256 (1936). The movant must provide a particular and specific demonstration of fact as to why the stay is necessary. *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) ("[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements."

2. <u>The City has not met its burden to show "good cause" for staying all discovery.</u>

The City has not met its burden in demonstrating that the harm to it in proceeding with discovery outweighs the harm against Bayou City Waterkeeper in delaying discovery.

Although the rules do not list specific factors for the courts to consider in determining a motion to stay, they do require the moving party to show "good cause." Fed. R. Civ. P. 26(c). The Rules also indicate that the purpose of a court intervening in discovery matters should be "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). When determining whether to stay proceedings, courts "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254. Even when a motion to dismiss is pending, the court still must balance the harm caused by the delay in discovery against the chance that discovery will not be necessary. *Conquest v. Camber Corp.*, No. 5:13-CV-1108-DAE, 2014 WL 172500 (W.D.Tex. Jan. 13, 2014)(Ezra, J.).

The City relies on several distinguishable cases to argue that any discovery, even disclosures, would impose an undue burden. (Doc. 23 at 7). Relevant to the Court in *Fujita* granting a stay on discovery was that the plaintiff requesting discovery had repeatedly missed established discovery deadlines, despite significant extensions by the court, and that the defendant had already produced 942 pages of requested medical records in response to plaintiff's earlier requests. 416 Fed.Appx. at 402-403. In *Conquest*, the plaintiff was seeking monetary damages and could

articulate no harm other than ambiguous assertions that his claims "die daily," which the court considered a "meager harm." 2014 WL 172500, at *1-2. In *Von Drake*, the Court found that many of the discovery requests submitted by a pro se plaintiff were overly broad and harassing, and also noted that the plaintiff was a frequent filer of lawsuits who had been chastised in a previous court for "attempting to make a mockery of the federal system." 2004 WL 1144142, at *2 (staying discovery when requests were "overly broad and harassing"); *id.* at n. 2.

In distinguishing *Von Drake*, the court in *Griffin* ultimately denied a discovery stay based on pending motions to dismiss, because defendants did not present any evidence regarding the breadth of any discovery that was being sought or the burden of responding to that discovery, or any abusive litigation tactics by the plaintiff. 2015 WL 11019132, at *3. Rather, the defendants sought "avoidance of expensive and time-consuming discovery" and argued that plaintiff would not be prejudiced because he could conduct discovery if the motions are denied. *Id.* The City makes similar generic assertions here.

Despite successfully intervening in the government enforcement action, Bayou City Waterkeeper has not been able to submit discovery requests, because the case was immediately stayed prior to Bayou City Waterkeeper being made a party. Because of the stay and insistence by negotiating parties that Bayou City Waterkeeper be excluded, it does not have any other way to request the information it may seek through discovery. Bayou City Waterkeeper has not attempted to lift the stay of the governmental enforcement action. Nor has Bayou City Waterkeeper submitted any discovery requests for the City in this citizen suit, although it does plan to. The City has alleged no overly broad requests or any harassing or abusive litigation tactics. Importantly, Bayou City Waterkeeper has alleged irreparable harm that will be caused by any delay in resolving the City's violations.

3. <u>The harm to Bayou City Waterkeeper mitigates in favor of proceeding with discovery.</u>

The potential harm to Bayou City Waterkeeper and its members from delay in discovery mitigates in favor of proceeding with discovery. The thousands of Clean Water Act violations set forth in Bayou City Waterkeeper's amended complaint (Doc. No. 10) are ongoing and pose an threat to water quality and public health in the Houston area, and have caused and will continue to cause significant damage to the waters that Bayou City Waterkeeper's members use and enjoy. (*Id.* at ¶ 4).

The irreparable character of environmental injury is well established in U.S. Supreme Court precedent. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987)("[e]nvironmental injury, by its nature . . . is often permanent or at least of long duration, i.e., irreparable." (quotations omitted)(abrogated in part on other grounds by *Winter v. Nat. Resources Defense Council*, 555 U.S. 7 (2008)). When determining the severity of environmental harm, the Fifth Circuit focuses not on the magnitude, but on the irreparability of the harm. *See Canal Authority of State of Fla. v. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974). Similarly, the irreparability of the threatened harm is not diminished by comparison to a more widespread problem out of the court's control. *See id.* at 576.

Once wastewater is discharged from the City's treatment and collection system, it is impossible to clean up. Instead, it quickly spreads and contaminates waters throughout the Houston area. Over the past five years, the City's violations have occurred repeatedly, with incidents in nearly every month for which data was provided. (Doc. 10 at ¶ 47). Therefore, irreparable harm is occurring and is likely to continue, growing together with any delay in resolving this case.

4. <u>The City has failed to show how any discovery, even initial disclosures, would be unduly burdensome or expensive.</u>

The City has failed to meet its burden to demonstrate any particular and specific facts to show why the stay is necessary. *See In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) ("[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." Instead, the City has resorted to a generic claim that discovery will be an "unnecessary" burden (Doc. 23 at 10) because discovery will not benefit the Court in ruling on the motion to dismiss or the parties in reaching settlement. Since Bayou City Waterkeeper has not submitted any discovery requests to the City, the City cannot argue harassing, oppressive, or overly broad requests. Rather, the City's position is that zero discovery, no matter the nature, is justified in light of the motion to dismiss and ongoing settlement negotiations. The City misses two important points: (1) the City's belief it will prevail on the motion is not sufficient to justify a stay (*see Griffin*, 2015 WL 11019132, at * 2); and (2) since the settlement does not involve Bayou City Waterkeeper, the settlement weighs heavily against the stay. Both points are discussed more below.

Furthermore, initial disclosures are simply the basic information that is needed in most cases to prepare for trial or make an informed decision about settlement. See Fed. R. Civ. Proc. 26 advisory committee notes, 1993 amendment. To date, the City has not attempted to produce initial disclosures or consult with counsel for Bayou City Waterkeeper on the matter. Neither did the City produce disclosures in the governmental enforcement action because of the immediate stay. Rule 26(c), on which the City relies to bring this motion, requires the movant to have, in good faith, conferred or attempted to confer with other parties "in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c). Instead, the City has refused to discuss discovery with Bayou City Waterkeeper and instead opted for this blanket request.

The City does not dispute its thousands of Clean Water Act violations, but believes that it should be exempt from disclosing the most basic information needed to resolve the claims against it. In the interest of judicial efficiency, parties have a duty to disclose without awaiting a discovery request. In other words, all parties to a litigation bear this burden. The City has not demonstrated any special burden imposed by initial disclosures or discovery that exempt it from *all* discovery. *See Standard Bank PLC v. Vero Ins., Ltd*., No. 08-cv-02127-PAB-BNB, 2009 WL 82494, at *2 (D. Colo. Jan. 13 2009) ("Parties always are burdened when they engage in litigation, whether the case ultimately is dismissed; summary judgment is granted; the case is settled; or a trial occurs. That is a consequence of our judicial system and the rules of civil procedure. There is no *special burden* on the parties in this case." (emphasis added)). At the very least, the City should produce initial disclosures.

5. <u>Settlement in the governmental enforcement action mitigates against a stay on discovery in this case.</u>

The ongoing settlement discussions between the EPA, the State of Texas, and the City, weigh against a stay on discovery in this case. While under normal circumstances, active settlement negotiations may justify a stay on discovery, this is not a normal situation. Here, the party seeking discovery is being intentionally excluded from settlement discussions, meaning Bayou City Waterkeeper has no other way to obtain the information it may seek through discovery.

The EPA and State have been aware of the City's Clean Water Act violations for years. (Doc 10 at ¶¶ 2, 3, 38, 39, 51). A 2005 Compliance Agreement mandated system-wide improvements to resolve the City's wastewater problems, yet the violations continued. (*See* Doc 10 at ¶¶ 3, 50). The history of noncompliance and inaction since, suggests that the EPA and State were unwilling or unable to bring the City into compliance with Clean Water Act or enforce the 2005 agreement, and that the EPA and State would not have brought their action now, but for

Bayou City Waterkeeper. Staying discovery would lessen the judicial effectiveness contemplated by the Clean Water Act and its citizen suit provision—and allow the EPA, State, and the City to proceed with business as usual, as though no enforcement action were filed. In short, a stay on all discovery would frustrate the intent of the Clean Water Act. Thus, harm to the public interest mitigates in favor of discovery.

Because Bayou City Waterkeeper is being excluded from settlement discussions, it is less relevant to the Court's balancing test, whether the final settlement is imminent. However, despite "several years" and approximately 22 weeks of settlement negotiations since the governmental enforcement action was filed, unimpeded by any discovery, the negotiating parties have not provided any settlement language, nor anything that would indicate the final settlement language will imminently moot Bayou City Waterkeeper's claims. Only upon entry of a consent decree, will this Court be able to determine if Bayou City Waterkeeper's claims are moot. Because Bayou City Waterkeeper has been excluded from these settlement negotiations, it would be prejudiced by a stay on discovery that would effectively shut the door to Bayou City Waterkeeper's participation in intervention or its own citizen suit.

Finally, Bayou City Waterkeeper disagrees with the City's assertion that discovery will not aid the parties in reaching a settlement. In light of City's history of noncompliance and the EPA and State's history of inaction, a very real concern remains—and is at the heart of Bayou City Waterkeeper's citizen suit—as to whether the governmental enforcement action is informed by relevant and necessary information that will explain the causes of the City's Clean Water Act violations, and thus, whether the resulting consent decree will be capable of remedying the violations, or even designed to do so.

6.   <u>Discovery may benefit the Court in rulings on the motions to dismiss.</u>

While Bayou City Waterkeeper generally agrees with the City's position that no discovery is needed to resolve motions to dismiss under Rule 12(b)(6) because those motions are decided on the face of the complaint (Doc 23 at 8), this case is unique. Generally, facial challenges to the legal sufficiency of a claim, can be resolved before discovery begins when the dispute presents a purely legal question; however, should the Court apply a presumption of diligence or heightened level of deference to the government's prosecution in analyzing whether its prosecution was diligent, then additional facts would assist the Court in ruling on the motions. Under such circumstances, Bayou City Waterkeeper requests discovery on the issue of diligent prosecution and leave of court to present additional evidence in response to the City's motions to dismiss. *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008) (holding that the court has discretion in type and amount of discovery permitted).

## VI.   Conclusion

The City of Houston has not met its burden of demonstrating good cause to stay all discovery, including disclosures, until after the Court rules on the pending motion to dismiss or until after the settlement negotiations in the governmental enforcement action conclude. For these reasons, Bayou City Waterkeeper asks the Court to deny the City's Motion to Stay Discovery. In the alternative, or under certain circumstances, the Court should allow for limited discovery.

Date: February 22, 2019

By: */s/ David Frederick*
David Frederick
Attorney-in-charge
Texas Bar No. 07412300
Eric Allmon, of counsel
Texas Bar No. 24031819
Lauren Ice, of counsel

13

Texas Bar No. 24092560
Frederick, Perales, Allmon & Rockwell, P.C.
1206 San Antonio St.
Austin, Texas 78701
Tel: (512) 469-6000
Fax: (512) 482-9346
dof@lf-lawfirm.com
eallmon@lf-lawfirm.com
lauren@lf-lawfirm.com
*Attorneys for Bayou City Waterkeeper*

Kristen Schlemmer, of counsel
Texas Bar No. 24075029
S.D. Tex. Bar No. 2078411
Bayou City Waterkeeper
2010 N. Loop West, Suite 275
Houston, TX 77018
Tel: (281) 901-0182
kristen@bayoucitywaterkeeper.org
*Attorney for Bayou City Waterkeeper*

<u>Certificate of Service</u>

I certify that on February 22, 2019, I electronically filed this Plaintiff Bayou City Waterkeeper's Response to Defendant City of Houston's Motion to Stay Discovery and all attachments using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

*/s/ David Frederick*
David Frederick
*Attorney for Bayou City Waterkeeper*

## Appendix

## Table of Contents

*Fujita v. U.S.,* 416 Fed.Appx. 400, 402 ........................................................................2

*Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*,
No. H-08-CV-0857, 2008 WL 8465061 ........................................................................7

*Conquest v. Camber Corp.*, No. 5:13-CV-1108-DAE, 2014 WL 172500
(W.D.Tex. Jan. 13, 2014)(Ezra, J.). .............................................................................10

*Von Drake v. National Broadcasting Co.*, No. 3-04-CV-0652-R,
 2004 WL 1144142 at *1 (N.D.Tex. May 20, 2004)(Kaplan, J.)......................................13

*Ford Motor Co. v. U.S. Auto Club, Motoring Division, Inc.*, No. 3-07-CV-2182-L, 2008
WL 2038887 (N.D.Tex. April 24, 2008)(Kaplan, J.). .....................................................16

*Griffin v. American Zurich Insurance Co.*, 2015 WL 11019132, at * 2 ..........................19

# APPENDIX A

Fujita v. U.S., 416 Fed.Appx. 400 (2011)

⚑ KeyCite Yellow Flag - Negative Treatment
Distinguished by XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.,
E.D.La., July 15, 2014

416 Fed.Appx. 400
This case was not selected for
publication in the Federal Reporter.
Not for Publication in West's Federal Reporter
See Fed. Rule of Appellate Procedure 32.1
generally governing citation of judicial
decisions issued on or after Jan. 1, 2007. See
also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4.
(Find CTA5 Rule 28 and Find CTA5 Rule 47)
United States Court of Appeals,
Fifth Circuit.

Richard FUJITA, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

No. 10–10258.
|
March 2, 2011.

**Synopsis**

**Background:** Pro se inmate brought action against prison
under Federal Tort Claims Act, alleging negligent medical
care. The United States District Court for the Northern
District of Texas, granted prison's motion for summary
judgment. Inmate appealed.

**Holding:** The Court of Appeals, Jerry E. Smith, Circuit
Judge, held that inmate would not be granted discovery
extension in order to obtain additional medical records for
purpose of obtaining an expert.

Affirmed.

West Headnotes (1)

[1]　**Federal Civil Procedure**
　　　👈 **Depositions and Discovery**

Pro se inmate would not be granted discovery
extension in order to obtain additional
medical records for purpose of obtaining an

expert to testify in inmate's claim against the
prison, under the Federal Tort Claims Act,
alleging that he received negligent medical
care; inmate had asked for an initial discovery
extension on day before expert disclosures
were due and was granted a six month
extension, and inmate's own recollection of
medications he had taken, in addition to the
962 pages of medical records which he had
received through discovery, should have been
sufficient for him to provide to prospective
experts. 28 U.S.C.A. § 1330 et seq.

12 Cases that cite this headnote

**Attorneys and Law Firms**

**\*400** Richard Fujita, FCI Fort Worth Unit, Fort Worth,
TX, pro se.

Donna Kathleen Webb, Charles Ottis Dobbs, Esq.,
Assistant U.S. Attorney, U.S. Attorney's Office, Fort
Worth, TX, for Defendant–Appellee.

Appeal from the United States District Court for the
Northern District of Texas, USDC No. 4:08–CV–126.

Before SMITH, WIENER, and OWEN, Circuit Judges.

**Opinion**

JERRY E. SMITH, Circuit Judge: [*]

**\*\*1** Richard Fujita appeals a summary judgment that
resulted from his failure to designate an expert to support
his medical malpractice claim. We affirm, because the
district court gave Fujita ample opportunity to designate
and did not abuse its discretion in enforcing its deadline.
Absent designation of an expert, there is no genuine issue
of material fact on the standard of care to support Fujita's
claims.

**\*401** I.

Fujita is a federal inmate. In February 2008, he sued
under the Federal Tort Claims Act ("FTCA"), alleging
that, for his asthma, he received negligent medical care
from the Bureau of Prisons ("BoP") and that he is entitled

to recover damages under Texas law. [1] Specifically, he claims that the BoP provided dangerously high doses of Prednisone against the advice of two asthma specialists, causing him to develop Type–II steroid-induced diabetes mellitus.

The scheduling order set a deadline of November 28, 2008, for Fujita to provide expert witness disclosures under Federal Rule of Civil Procedure 26(a)(2) and a deadline of March 31, 2009, to complete discovery. Several weeks later, the government moved for an extension of time, and the court extended the expert-disclosure deadline to January 28, 2009, and the discovery deadline to June 1, 2009.

Fujita took no action until January 27, 2009, when he served the government with his first request for production of documents, including a request for his medical records. [2] The government responded by noting that Fujita could request his medical records directly from the BoP. When Fujita objected that doing so would take too long, the government produced 942 pages of medical records and 960 pages of health-service materials. Fujita objected by letter that he could not locate his prescription-drug history among the produced documents, but the government refused to produce more documents or to identify the location of the requested materials, again reminding Fujita that he could request them directly from the BoP.

On April 21, Fujita moved to compel the government to produce the requested documents. Instead of responding, the government moved for summary judgment on April 30, then on May 7 moved to stay discovery, pending a ruling on the summary judgment motion, arguing that Fujita could not prove his claim without a medical expert and that he had not timely designated one. Also on May 7, Fujita served a request for admissions.

Fujita answered the summary judgment motion on May 28 with a Federal Rule of Civil Procedure 56(f) motion for continuance until he could complete further discovery, reasoning that he could not designate a medical expert until the government complied with his first discovery request and released all his medical records. On June 5, the government filed a motion for a protective order. Fujita on June 9 filed a second motion to compel production of the medical records and for discovery sanctions.

The court resolved these matters in an order of June 25. It granted Fujita until August 10 to designate an expert and thus avoid summary judgment, but it stayed all discovery in the interim and deferred ruling on Fujita's motions to compel. Later the court extended that deadline until August 24. On September 2, Fujita notified the court that he could not meet that deadline, protesting that an expert who had expressed interest in his case would not sign on until the expert had evaluated the medical records that the government had declined to release. The court refused to allow more time, instead granting the motion for summary judgment and dismissing **\*402** the action. Fujita appeals the summary judgment.

## II.

**\*\*2** The district court has "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir.1987). For example, under Federal Rule of Civil Procedure 26(c), the court may stay discovery for "good cause," such as a finding that further discovery will impose undue burden or expense without aiding the resolution of the dispositive motions. [3] We review the grant of a motion to stay discovery for abuse of discretion. [4]

The court had good cause to stay discovery. The pending summary judgment motion was dispositive and turned solely on whether Fujita could appoint a medical expert. Fujita asserted that he could not obtain an expert without further discovery, but the court rejected that contention. That decision was correct for at least three reasons.

First, the lack of medical records was not the most significant reason for Fujita's delay in securing an expert. He knew the initial deadline for submitting expert disclosures was January 28, but he did not request his records until January 27. Had the lack of records really thwarted his efforts to obtain an expert, he should have sought to obtain them well before the expert deadline. His delay in doing so suggests that his argument is a pretext disguising an initial lack of diligence in finding an expert. [5]

Second, the government repeatedly and accurately informed Fujita that he could get all his medical records from the BoP. *See* Bureau of Prisons Program Statement

6090.02, at 15 (Oct. 13, 2008). There is no indication in the record that Fujita made such a request.

Third, Fujita had already obtained 942 pages of his medical records. Although he may be correct that those pages left out the relevant prescription history, those records, combined with Fujita's own recollections of the drugs he was taking, provided some basis to consult with an expert.

Fujita's difficulties deserve some solicitude because of "this court's traditional disposition of leniency toward pro se litigants." *Spotville v. Cain,* 149 F.3d 374, 377 (5th Cir.1998). The district court was lenient enough, however. Its initial deadline for expert disclosures was November 28, 2008, but it gave an extended deadline to January 28, 2009. Fujita let that deadline pass without designating an expert or explaining his failure to do so. In fact, he gave no indication that he even wanted to designate an expert until his May 28 motion to continue.

The court would have been justified in enforcing the deadline. [6] Instead, it extended **\*403** the deadline by over six months, giving Fujita until August 10—and then until August 24—to find an expert. Moreover, the court did not require Fujita to have an expert report prepared by that time, so long as he had secured a commitment from an expert to testify. The district court by no means abused its discretion in its management of discovery.

### III.

**\*\*3** "We review [a] summary judgment *de novo.*" *Dunn–McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.,* 630 F.3d 431, 435 (5th Cir.2011) (citing *Croft v. Governor of Tex.,* 562 F.3d 735, 742 (5th Cir.2009)). Summary

judgment is appropriate if there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).

The district court correctly concluded that the government is entitled to summary judgment if Fujita cannot designate an expert witness to establish that the government breached the standard of care, an essential element of the medical-malpractice claim. [7] Fujita does not dispute that maxim but argues that summary judgment is disfavored where relevant evidence remains to be discovered and that the court should have given him more time to find an expert. As we have explained, however, the court gave Fujita ample time, and it was reasonable to conclude that granting yet more time would not make a difference.

Finally, Fujita maintains that there is a genuine dispute as to a material fact, because the government did not timely respond to his request for admissions, so all of them should be deemed admitted. *See* FED.R.CIV.P. 36(a)(3). Fujita served the request on April 30. [8] The thirtieth day was Saturday, May 30, FED.R.CIV.P. 6(a)(1)(C), so the period ran until the next business day, June 1. The government had three additional days to respond under Rule 6(d), because Fujita mailed the documents. The deadline to respond was therefore June 4. The government timely responded by serving its objections and motion for a protective order that day. Thus, there were no deemed admissions.

For the reasons stated, the summary judgment is AFFIRMED.

### All Citations

416 Fed.Appx. 400, 2011 WL 721515

---

#### Footnotes

\*   Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1   The FTCA authorizes civil actions for damages against the United States for the negligent acts of its employees where private individuals would be liable under the law of the state in which the acts occurred. *See* 28 U.S.C. § 1346(b).

2   Fujita dated the request January 29 but certified that it was served on January 27.

3   *See Landry v. Air Line Pilots Ass'n Int'l AFL–CIO,* 901 F.2d 404, 435–36 (5th Cir.1990); *see also* 6 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 26.105[3][c] (3d ed.2010).

4   *See Brandley v. Keeshan,* 64 F.3d 196, 200 (5th Cir.1995), *abrogated on other grounds by Wallace v. Kato,* 549 U.S. 384, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007).

5    The deadlines in the scheduling order were justified and routine. Courts must set the deadline for expert disclosures well before the close of discovery to ensure that the other side has an opportunity to depose the expert. 3 MOORE ET AL., *supra,* § 16.13[2][b][iii].

6    *See Geiserman v. MacDonald,* 893 F.2d 787, 790 (5th Cir.1990) ("Rule 16(b) of the Federal Rules of Civil Procedure authorizes the district court to control and expedite pretrial discovery through a scheduling order. Consistent with the authority vested in the trial court by rule 16, our court gives the trial court 'broad discretion to preserve the integrity and purpose of the pretrial order.' " (quoting *Hodges v. United States,* 597 F.2d 1014, 1018 (5th Cir.1979))); *see also* 3 MOORE ET AL., *supra,* § 16.14[1][a] (noting that the enforcement of scheduling orders is an "essential mechanism for cases becoming trial-ready in an efficient, just and certain manner" (quoting *Rouse v. Farmers State Bank of Jewell, Iowa,* 866 F.Supp. 1191, 1198 (N.D.Iowa 1994))).

7    *See Hannah v. United States,* 523 F.3d 597, 601–02 (5th Cir.2008) (holding that expert testimony is required to establish that the defendant breached the standard of care in a Texas medical malpractice case unless " 'the mode or form of treatment is a matter of common knowledge or is within the experience of the layman' " (quoting *Hood v. Phillips,* 554 S.W.2d 160, 165–66 (Tex.1977))).

8    Fujita argues that the date of service should be calculated from the date that he handed the request for admissions to the prison guards under the "prisoner mailbox rule." *See Stoot v. Cain,* 570 F.3d 669, 671 (5th Cir.2009). That rule applies to calculate the date a prisoner *files* a document, not the date he *serves* it on another party. *See id.* ("Under the prison mailbox rule, a prisoner's pleading is deemed to have been filed on the date that the *pro se* prisoner submits the pleading to prison authorities for mailing."). *Service* is complete when the document was mailed. *See* FED.R.CIV.P. 5(b)(2)(C).

---

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX B

Case 4:18-cv-03369   Document 24   Filed on 02/22/19 in TXSD   Page 22 of 36

Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., Not Reported in...

2008 WL 8465061

2008 WL 8465061
Only the Westlaw citation is currently available.
United States District Court,
S.D. Texas,
Houston Division.

RIO GRANDE ROYALTY COMPANY,
INC., on behalf of itself and all
others similarly situated, Plaintiff,

v.

ENERGY TRANSFER PARTNERS, L.P., Energy
Transfer Company, ETC Marketing, Ltd.,
and Houston Pipeline Company, Defendants.

No. H–08–cv–0857.
|
Aug. 11, 2008.

**Attorneys and Law Firms**

Bernard Persky, Gregory Asciolla, William Vincent Reiss, Labaton Sucharow LLP, New York, NY, Robert A. Chaffin, Chaffin Stiles, Houston, TX, for Plaintiff.

Charles W. Schwartz, Skadden Arps et al., Houston, TX, Jerome Hirsch, Skadden Arps et al., New York, NY, Steven Sunshine, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, for Defendants.

## *MEMORANDUM AND ORDER*

KEITH P. ELLISON, District Judge.

**\*1** On this day the Court considered Defendants' Motion for Protective Order Staying Discovery. Defendants have asked the Court to stay discovery in this case pursuant to Federal Rule of Civil Procedure 26(b) and (c). After considering the briefing and the arguments presented by parties at the July 22, 2008 hearing, the Court has concluded that Defendants' Motion for Protective Order Staying Discovery, Docket No. 19, should be **GRANTED.**

Plaintiff has asked Defendants to produce all documents and electronically stored information submitted to the Commodity Futures Trading Commission (CFTC), the Federal Energy Regulatory Commission (FERC), or any other government agency or investigatory body in connection with federal investigations into Defendants'

natural gas trading activities. Defendants explain that the request would require them to review millions of pages of documents that were produced to the CFTC and FERC for privilege, and would be unduly burdensome, resulting in hundreds of thousands of dollars in costs. Defendants also argue that Plaintiff's request is overly broad, because, *inter alia,* the documents produced to the CFTC and FERC relate to time periods and locations that are not within the scope of Plaintiff's complaint.

The Federal Rules of Civil Procedure presume that discovery may proceed despite the filing of a Motion to Dismiss, and this case is not governed by a statute such as the Private Securities Litigation Reform Act (PSLRA) that requires discovery to be stayed until the Court has ruled on a Motion to Dismiss. The Court does have discretion to stay discovery pending a ruling on a Motion to Dismiss, however. *See, e.g., Landry v. Air Line Pilots Ass'n Intern. AFL–CIO,* 901 F.2d 404, 435–36 (5th Cir.1990); *Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir.1987)* ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."). Some courts have recognized that "staying discovery may be particularly appropriate in antitrust cases, where discovery tends to be broad, time-consuming and expensive." *Netflix Antitrust Litig.,* 506 F.Supp. 308, 321 (N.D.Cal.2007) (allowing narrowly-tailored discovery to go forward) (citing *Bell Atlantic v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007)); *see also In re Graphics Processing Units Antitrust Litig.,* No. C 06–07417, 2007 WL 2127577, at \*4 (N.D.Cal. July 24, 2007) (recognizing that *Twombly* did not "erect an automatic, blanket prohibition on any and all discovery before an antitrust plaintiff's complaint survives a motion to dismiss," but noting that "to allow antitrust discovery prior to sustaining a complaint would defeat one of the rationales of *Twombly,* at least when the discovery would be burdensome.").

The Court finds that the discovery requested by Plaintiff would constitute an undue burden for Defendants. Although the documents have already been assembled and produced to government agencies, thus reducing the burden to Defendants somewhat, Defendants' need to review such a large volume of documents prior to producing them would be a significant burden. Furthermore, Plaintiff concedes that it does not need this discovery to respond to the pending Motion to Dismiss.

Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P., Not Reported in...

2008 WL 8465061

*See Petrus v. Bowen,* 833 F.2d 581, 582 (5th Cir.1987) (upholding a discovery stay where Plaintiff would not have learned anything that could affect the resolution of the dispositive motion). Although some courts have also considered the strength of the dispositive motion when determining whether to stay discovery, *see, e.g., Von Drake v. Nat'l Broad Co.,* No. 04–cv–0652, 2004 WL 1144142, at *1 (N.D.Tex. May 20, 2004), briefing on the Motion is not complete, and the Court does not wish to make a premature pronouncement on its merits.[1] The Court believes that discovery should be stayed given the burden to Defendant of reviewing the documents and because Plaintiff has not demonstrated any need for the documents prior to this Court's ruling on the pending Motion.

**\*2** Defendant's Motion is, therefore, **GRANTED.** All discovery in this case, including Rule 26 disclosures, is stayed pending the Court's ruling on Defendants' Motion to Dismiss, filed May 19, 2008.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 8465061

Footnotes

1       This Order should not be understood as any indication of how the Court will ultimately rule on Defendants' Motion to Dismiss.

**End of Document**                                                © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX C

2014 WL 172500
Only the Westlaw citation is currently available.
Only the Westlaw citation is currently available.
United States District Court,
W.D. Texas,
San Antonio Division.

John CONQUEST, individually, and on behalf
of all others similarly situated, Plaintiff,

v.

CAMBER CORPORATION, Defendant.

Cv. No. 5:13–cv–1108–DAE.
|
Jan. 13, 2014.

**Attorneys and Law Firms**

Curt Hesse, Melissa Moore, Moore & Associates,
Houston, TX, for Plaintiff.

Christopher M. Pape, David J. Canupp, J. R. Brooks,
Lanier Ford Shaver & Payne, P.C., Huntsville, AL, for
Defendant.

*ORDER GRANTING DEFENDANT'S MOTION
TO STAY DISCOVERY PENDING
RESOLUTION OF MOTION TO DISMISS*

DAVID ALAN EZRA, Senior District Judge.

**\*1** Before the Court is Defendant Camber Corporation's
Motion to Stay Discovery Pending Resolution of Motion
to Dismiss (Dkt.# 15), to which Plaintiff John Conquest
filed a Response (Dkt.# 17.) For the reasons that
follow, the Court **GRANTS** Defendant's Motion to Stay
Discovery. [1]

*BACKGROUND*

Plaintiff John Conquest filed a putative collective action
lawsuit against Defendant Camber Corporation on
December 5, 2013, alleging that Defendant violated
the Fair Labor Standards Act, 29 U.S.C. §§ 201–209
("FLSA"), by failing to pay him overtime hours worked
in excess of forty hours per workweek. (Dkt. # 1 ¶¶ 24–
30.) Defendant did not file an Answer. Instead, Defendant

filed a Motion to Dismiss under Federal Rule of Civil
Procedure 12(b)(1) for lack of subject matter jurisdiction,
arguing that Plaintiff's claims are moot after Defendant
tendered an offer of judgment pursuant to Rule 68. (Dkt.
# 14 at 5–14.)

*DISCUSSION*

In support of its request for a temporary stay of
discovery, Defendant argues that it would be wasteful
of the parties' resources to conduct discovery prior to
the court entering an order addressing the pending
motion to dismiss, especially because Defendant asserts
jurisdictional challenges. (Dkt. # 15 at 3.) Plaintiff John
Conquest counters that employees' claims under the
FLSA continue to "die daily" until each putative plaintiff
files his or her written consent to take part in the action
under 29 U.S.C. § 216(b). (Dkt. # 17 at 2.) According to
Plaintiff, "a stay pending resolution of Camber's Motion
to Dismiss would erode the claims of putative class
members with each passing day." (*Id.*)

"A trial court has broad discretion and inherent power
to stay discovery until preliminary questions that may
dispose of the case are determined." *Petrus v. Bowen,*
833 F.2d 581, 583 (5th Cir.1987). A district court
properly exercises this discretion to stay discovery upon a
showing of good cause. Fed.R.Civ.P. 26(c). Good cause
exists when the party from whom discovery is sought
shows that it would suffer "annoyance, embarrassment,
oppression or undue burden or expense" absent a stay.
*Id.* To determine whether a stay is appropriate a district
court "must balance the harm produced by the delay
in discovery against the possibility that the motion will
be granted and entirely eliminate the need for such
discovery." *Feldman v. Flood,* 176 F.R.D. 651, 652
(M.D.Fla.1997); *see also Von Drake v. Nat'l Broad. Co.,
Inc.,* No. 3–04–CV–0652–R, 2004 WL 1144142, at *1
(N.D.Tex. May 20, 2004) (staying discovery "may be
appropriate where the disposition of a motion to dismiss
'might preclude the need for the discovery altogether
thus saving time and expense' " (quoting *Landry v. Air
Line Pilots Ass'n Int'l AFL–CIO,* 901 F.2d 404, 436 (5th
Cir.1990))).

Defendant has met its "good cause" burden. Without
commenting on the merits of Defendant's jurisdictional
arguments in its Motion to Dismiss, the Court notes that

if it did grant Defendant's Motion, the need for discovery would be eliminated because the Court would not have jurisdiction. *See Sapp v. Mem. Hermann Healthcare Sys., 406 F. App'x 866, 871 (5th Cir.2010)* (affirming district court's decision to stay discovery when questions of law suggest that the case may not reach a determination on the merits). When balancing the meager harm produced by such a temporary stay at the outset of this case against the possibility that Defendant's Motion to Dismiss will be granted and entirely eliminate the need for such discovery, this Court finds that a temporary stay is appropriate.

**\*2** It is true, however, that a stay of discovery is not appropriate when it could prevent a party from "having a sufficient opportunity to develop a factual base for defending against a dispositive motion." *See, e.g., Kutilek v. Gannon, 132 F.R.D. 296, 298 (D.Kan.1990).* But Plaintiff does not argue that discovery is necessary to develop facts to help defend against Defendant's Motion to Dismiss for lack of jurisdiction. Plaintiff only ambiguously asserts that his claims "die daily." (Dkt. # 17 at 2.) Absent the necessity to develop a factual

basis, the Court finds that a stay of discovery pending resolution of the legal issues addressed in Defendant's Motion to Dismiss is warranted. *See Smith v. Potter, 400 F. App'x 806, 813 (5th Cir.2010)* (affirming district court's decision to stay discovery when pending motion to dismiss addressed issues "largely legal rather than factual in nature").

*CONCLUSION*

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Stay Discovery. (Dkt.# 15.) However, the stay will be **automatically lifted** once the Court rules on Defendant's Motion to Dismiss (Dkt.# 14).

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 172500

Footnotes

1    Pursuant to Local Court Rule 7(h), the Court finds this matter suitable for disposition without a hearing.

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX D

Von Drake v. National Broadcasting Co., Inc., Not Reported in F.Supp.2d (2004)

2004 WL 1144142

KeyCite Yellow Flag - Negative Treatment
Distinguished by Griffin v. American Zurich Insurance Company, N.D.Tex., March 18, 2015

2004 WL 1144142
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

Eric VON DRAKE Plaintiff,

v.

NATIONAL BROADCASTING
COMPANY, INC., et al. Defendants.

No. 3-04-CV-0652R.
|
May 20, 2004.

**Attorneys and Law Firms**

Eric Von Drake, Richardson, TX, pro se.

Robert P Latham, Alisha LaRochelle Danchak, Jackson Walker, Dallas, TX, for Defendants.

*MEMORANDUM ORDER*

KAPLAN, Magistrate J.

**\*1** Defendants National Broadcasting Company, Inc. and Tom Touchet have filed a motion for a temporary stay of discovery pending a ruling on their motion to dismiss. For the reasons stated herein, the motion is granted.

**I.**

This is a *pro se* race and age discrimination case brought under the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab.Code Ann. § 21.001, *et seq.,* with a related claim for intentional infliction of emotional distress. Plaintiff Eric Von Drake, a 49-year old African-American male, accuses the defendants of discrimination for failing to select him as a finalist for a singing competition produced by the *Today Show.* On February 27, 2004, plaintiff filed suit in Texas state district court. Defendants were served by certified mail on March 3, 2004. Along with the complaint, plaintiff served defendants with multiple interrogatories and document requests seeking, *inter alia,* detailed information about the 6,000 people who applied for the singing competition, federal tax returns for the past five years, and copies of felony arrest records regarding Tom Touchet, Robert Wright, and Anthony Lock. Defendants timely removed the case to federal court on March 29, 2004. [1] Shortly thereafter, defendants filed a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. That motion is currently pending before the district judge. Defendants now seek a temporary stay of discovery pending a ruling on their motion to dismiss. Plaintiff has filed a response in opposition to a stay of discovery and the motion is ripe for determination.

**II.**

A federal district court has discretion to stay discovery "for good cause shown." FED. R. CIV. P. 26(c). While discovery may be stayed pending the outcome of a motion to dismiss, "the issuance of stay is by no means automatic." *Spencer Trask Software and Information Services, LLC v. RPost International Limited,* 206 F.R.D. 367, 368 (S.D.N.Y.2002), *quoting In re WRT Energy Securities Litigation,* 1996 WL 580930 at \*1 (S.D.N.Y. Oct.9, 1996). Among the factors that inform the court's discretion are: (1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay. *Id., citing Anti-Monopoly, Inc. v. Hasbro, Inc.,* 1996 WL 101277 at \*3 (S.D.N.Y. Mar.7, 1996) *and Gandler v. Nazarov,* 1994 WL 702004 at \*4 (S.D.N.Y. Dec.14, 1994). A stay of discovery may be appropriate where the disposition of a motion to dismiss "might preclude the need for the discovery altogether thus saving time and expense." *Landry v. Air Line Pilots Ass'n International AFL-CIO,* 901 F.2d 404, 436 (5th Cir.), *cert. denied,* 111 S.Ct. 244 (1990). *See also Nankivil v. Lockheed Martin Corporation,* 216 F.R.D. 689 (M.D.Fla.2003), *aff'd,* 87 Fed.Appx. 713, 2003 WL 22669331 (11th Cir. Oct.23, 2003), *cert. denied,* 2004 WL 540542 (U.S. May 17, 2004) (citing cases) (good cause to stay discovery exists where "resolution of preliminary motion may dispose of entire action").

**\*2** Although the magistrate judge cannot predict the outcome of defendants' motion to dismiss, a cursory review of the motion reveals that defendants have substantial arguments for dismissal of many, if not all, of

Von Drake v. National Broadcasting Co., Inc., Not Reported in F.Supp.2d (2004)

2004 WL 1144142

plaintiff's claims. Moreover, many of the interrogatories and document requests served on defendants are overly broad and harassing. Plaintiff has not shown that a temporary stay of discovery will substantially or unduly delay the litigation should his claims survive summary dismissal. Under these unique circumstances, a stay is warranted. [2]

*CONCLUSION*

Defendants' motion for a temporary stay of discovery is granted. All discovery in this case is stayed pending a ruling on defendants' motion to dismiss.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 1144142

Footnotes

1    Although plaintiff alleges only state statutory and common law causes of action, he seeks "liquidated damages pursuant to the Fair Labor Standards Act." (*See* Plf. Compl. at 9, ¶ 29). Defendants therefore removed this action on the basis of federal question jurisdiction. *See* 28 U.S.C. § 1331. Alternatively, defendants maintain that federal diversity jurisdiction is proper because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

2    The court takes judicial notice that plaintiff is no stranger to the civil justice system, having filed more than 26 lawsuits in the past five years. (*See* Def. Mot., Exh. 1 at 29-33). At a recent hearing before another judge in this district, plaintiff was chastised for "attempting to make a mockery of the federal system." (*Id.*, Exh. 1 at 19).

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

# APPENDIX E

2008 WL 2038887
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas,
Dallas Division.

FORD MOTOR COMPANY, et al., Plaintiffs,
v.
UNITED STATES AUTO CLUB,
MOTORING DIVISION, INC., Defendant.

No. 3-07-CV-2182-L.
|
April 24, 2008.

### MEMORANDUM ORDER

JEFF KAPLAN, United States Magistrate Judge.

**\*1** Defendant has filed a motion for protective order and to stay discovery in this civil action pending a ruling on its Rule 12(b) (6) motion to dismiss. In support of its request for a stay, defendant argues that a favorable ruling on the motion to dismiss "could entirely eliminate the need for a considerable amount of the discovery sought." (*See* Def. Mot. at 2). Defendant further argues that a stay will obviate the necessity of having to determine the propriety of interrogatories and document requests served by plaintiffs, many of which defendant believes are overly broad and unduly burdensome. Because the motion to dismiss has been fully briefed and is ripe for determination, defendant contends that a stay of all discovery is warranted.

A federal district court has discretion to stay discovery "for good cause shown." *Von Drake v. National Broadcasting Co.,* No. 3-04-CV-0652-R, 2004 WL 1144142 at *1 (N.D.Tex. May 20, 2004) (Kaplan, J.), *citing* Fed.R.Civ.P. 26(c). While discovery may be stayed pending the outcome of a motion to dismiss, "the issuance of [a] stay is by no means automatic." *Id., quoting Spencer Trask Software and Information Services, LLC v. RPost International Limited,* 206 F.R.D. 367, 368 (S.D.N.Y.2002). In fact, such a stay is the exception rather than the rule. *i2 Technologies U.S. Inc. v. Lanell,* No. 3-02-CV-0134-G, or. at 1 (N.D.Tex. May 6, 2002) (Kaplan, J.). As one court observed, "[h]ad the Federal Rules contemplated that a motion to dismiss under Fed.R.Civ.P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Gray v. First Winthrop Corp.,* 133 F.R.D. 39, 40 (N.D.Cal.1990).

The court declines to stay discovery merely because defendant believes it will prevail on its motion to dismiss. Although the magistrate judge cannot predict the outcome of the motion, it is significant to note that defendant does not seek dismissal of the entire case. Rather, the motion to dismiss is directed only to plaintiffs' claims for injunctive and declaratory relief related to toll-free numbers used by defendant to provide roadside assistance to customers of Ford Motor Company and Land Rover North America. The motion to dismiss does not address the other claims asserted by plaintiffs, including their claim for refunds allegedly owed by defendant upon the termination of the roadside assistance agreement. Nor is the court persuaded that discovery should be stayed because defendant objects to certain interrogatories and document requests. If plaintiffs wish to challenge the objections asserted by defendant, they may file an appropriate motion with the court after the parties comply with the Standing Order on Discovery Motions filed today.

For these reasons, defendant's motion for protective order and to stay discovery [Doc. # 23] is denied. [1]

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2008 WL 2038887

---

Footnotes

1    The Civil Justice Expense and Delay Reduction Plan adopted by this court provides that "[e]ach judge will continue to give priority to the monitoring and resolution of pending motions." Plan at § XI(2), *reprinted in* Texas Rules of Court-Federal at 284 (West Pamph. Supp.2007). To eliminate undue delay and unnecessary expense to the parties in this and other civil actions, and because defendant has failed to establish "good cause" for staying discovery, the court decides the motion without a written response.

**Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc., Not Reported in F.Supp.2d (2008)**

---

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

"

"

"

"

"

CRRGP F KZ 'H'

2015 WL 11019132
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Dallas Division.

Trent S. Griffin, Sr., Plaintiff,

v.

American Zurich Insurance Company; Walgreens
Company; Greg Wasson, Chief Executive Officer;
Jim Reilly, Sr. Director Human Resources; Chester
Stevens, District Manager; Januari Lewis, Pharmacy
Supervisor; Jerry Padilla, Pharmacy Supervisor;
Felicia Felton, Store Manager; Jerline Washington,
Pharmacy Manager; Vanessa Strong, Store Manager;
Miranda Martinez, Pharmacy Technician; Daravanh
Khanmanivanh, Pharmacy Technician; Texas
Department of Insurance, Division of Workers'
Compensation, Rob Bordelon, Texas Workers'
Compensation Commissioner; Rick Perry, Governor,
State of Texas; Greg Abbott, Attorney General; John
Specia Jr., Commissioner C.P.S.; Stephen Mckenna,
Child Support Officer; Mary Iverson, Authorized
Agent; Wells Fargo Bank, John Doe (1); John
Doe (2); John Doe (3); John Doe (4), Defendants.

CIVIL ACTION NO. 3:14-CV-2470-P
|
Filed 03/18/2015

### ORDER

IRMA CARRILLO RAMIREZ, UNITED STATES
MAGISTRATE JUDGE

**\*1** Pursuant to the orders of reference dated October 15,
2014 (doc. 46), October 20, 2014 (doc. 50), and October
23, 2014 (doc. 58), before the Court for determination
are *State Defendants' Opposed Motion to Stay Discovery*,
filed October 14, 2014 (doc. 42); *Walgreens Company and
Walgreen Employee Defendants' Motion to Stay Discovery
Pending Resolution of Their Motion to Dismiss and Motion
to Strike*, filed October 15, 2014 (doc. 43); *Wells Fargo
Bank, N.A.'s Joinder in the State Defendants' Opposed
Motion to Stay Discovery and Walgreens Company and
Walgreen Employee Defendants' Motion to Stay Discovery
Pending Resolution of Their Motion to Dismiss and*

*Motion to Strike,* filed October 16, 2014 (doc. 47); and
*American Zurich Insurance Company's Motion to Stay
Discovery Pending Resolution of its Motion to Dismiss*,
filed October 22, 2014 (doc. 56). Based on the relevant
filings and applicable law, the State Defendants' motion
is **GRANTED**, and Walgreens and American Zurich's
motions are **DENIED**.

### I. BACKGROUND

On July 10, 2014, Trent S. Griffin, Sr. ("Plaintiff") filed
suit against numerous defendants asserting numerous
claims. He claims that certain employees of Walgreens
Company ("Walgreens") retaliated, discriminated, and
failed to accommodate his purported disability, among
other things. He claims that American Zurich Insurance
Company ("American Zurich") failed to pay him
benefits without conducting a reasonable investigation
in accordance wit the Texas Labor Code. Plaintiff also
sued former Governor Rick Perry, the Texas Department
of Insurance-Worker's Compensation Division, and Rod
Bordelon, Commissioner of Workers' Compensation,
based on the outcome of his workers' compensation claim.
Finally, he asserts claims against Greg Abbott, Attorney
General for the State of Texas; Stephen McKenna and
Mary Iverson, employees in the Child Support Division
with the Office of the Attorney General; and John Specia
Jr., Commissioner for the Department of Family and
Protective Services (collectively "State Defendants"), over
a lien for child support allegedly placed on his bank
account.

The State Defendants, Walgreens, and American Zurich
move to stay discovery.

### II. STAY BASED ON QUALIFIED
### IMMUNITY DEFENSE

State Defendants move to stay discovery against them
pending determination of the resolution of the threshold
issue of their entitlement to qualified immunity.

"Public officials acting within the scope of their official
duties are shielded from civil liability by the qualified
immunity doctrine." *Kipps v. Caillier*, 197 F.3d 765,
768 (5th Cir. 1999). "Subjecting officials to trial,
traditional discovery, or both concerning acts for which

they are likely immune undercuts the protection from governmental disruption which official immunity is purposed to afford." *Elliott v. Perez*, 751 F.2d 1472, 1478 (5th Cir. 1985). Thus, "allowing any but perhaps the most preliminary proceedings on the immunity-barred claim runs squarely counter to the doctrine's basic protective purpose: that officials be free to exercise their duties and functions without fear of having their attentions distracted by the subsequent claims of unhappy or unsuccessful litigants." *Id.*

**\*2**  "[Q]ualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Lion Boulos v. Wilson*, 834 F.2d 504, 507 (5th Circ. 1987); *see also Wicks v. Miss. State Employment Servs.*, 41 F.3d 991, 994 (5th Cir. 1995). Limited discovery, for instance, may be allowed on the issue of qualified immunity. A court must make two inquiries in determining whether to allow limited discovery on the issue of qualified immunity. First, it must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Wicks*, 41 F.3d at 995. If the plaintiff's pleadings fail to meet this heightened pleading standard, the court should dismiss the case "before any discovery is allowed." *Id.* If, however, the plaintiff's pleadings do meet this standard, the court must then determine "whether the immunity defense sufficiently turn[s] on a factual issue requiring discovery." *Id.* At 997. If the defendant's immunity defense does in fact turn on a factual issue requiring discovery, the court "may then proceed ... to allow the discovery necessary to clarify those facts upon which the immunity defense turns." *Id.* At 995.

In this case, State Defendants have asserted the qualified immunity defense. Discovery limited to the qualified immunity issue should therefore only take place if the court finds both the Plaintiff's pleadings have met the heightened pleadings standard and that State Defendants' qualified immunity defense turns on a factual issue requiring discovery. The decision whether to allow discovery must therefore await assessment of whether Plaintiff's complaint is sufficient to overcome the assertion of qualified immunity or is otherwise adequate to warrant his obtaining limited discovery. *See Rhodes v. Prince*, 2006 WL 954023, at \*1 (N.D. Tex. Apr. 11, 2006) (Fitzwater J.) (citing *Wicks*, 41 F.3d at 994) (ruling that the decision whether to allow discovery must await the magistrate judge's assessment of whether plaintiff's rule

7(a) reply was sufficient to overcome defendants' claims of qualified immunity or is otherwise adequate to warrant his obtaining limited discovery because even limited discovery "must not proceed until the district court *first* finds that plaintiff's pleadings assert facts which, if true would overcome the defense of qualified immunity") (emphasis in original).

A stay of discovery is therefore appropriate pending determination of the State Defendants' motion to dismiss.

## II. STAY BASED ON PENDING MOTIONS TO DISMISS

Walgreens and American Zurich move to stay discovery pursuant to *Fed. R. Civ. P. 26(c)* in the interest of justice and judicial economy. They argue that there is good cause for a stay of discovery pending resolution of their motions to dismiss, including the avoidance of expensive and time-consuming discovery on claims that may not survive a motion to dismiss. (*See* docs. 44 at 3-4, 57 at 3-4.) They also argue that the plaintiff will not be prejudiced because he may conduct discovery on his claims if their motions are denied. (*Id.*)

Upon a motion by a party and for good cause shown, a district court can limit discovery and "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Fed. R. Civ. P. 26(c)*. A federal district court has discretion to stay discovery "for good cause shown." *Von Drake v. National Broadcasting Co.*, No. 3:04-CV-0652-R, 2004 WL 1144142 at \*1 (N.D. Tex. May 20, 2004) (Kaplan, J.), *citing Fed. R. Civ. P. 26(c)*. Some of the factors informing the court's discretion are: "(1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Id., citing Spencer Trask Software and Information Services, LLC v. RPost International Limited*, 206 F.R.D. 367, 368 (S.D.N.Y. 2002) (citations omitted).

"[A] trial court may properly exercise its discretion to stay discovery pending a decision on a dispositive motion." *Corwin v. Marney, Orton Invs.*, 843 F.2d 194, 200 (5th Cir. 1988) (citation omitted). "Such a stay is not, however, automatically granted whenever a motion to dismiss is pending." *Stanissis v. Dyncorp. Intern. LLC*, 3:14-

CV-2736-D, 2014 WL 7183942, at *1 (N.D. Tex. Dec. 17, 2014); *see also Von Drake*, 2004 WL 1144142 at *1 ("the issuance of [a] stay is by no means automatic"), quoting *Spencer Trask Software*, 206 F.R.D. at 368. "In fact, such a stay is the exception rather than the rule." *Glazer's Wholesale Drug Co., Inc. v. Klein Foods, Inc.*, No. 3:08-CV-0774-L, 2008 WL 2930482 at *1 (N.D. Tex. July 23, 2008) (Kaplan, J.). "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect." *Glazer's*, 2008 WL 2930482 at *1, *quoting Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). Nor is a stay of discovery permitted merely because defendant believes it will prevail on its motion to dismiss. *Id.*

**\*3** Walgreens and American Zurich cite to *Von Drake* in support of their requests for a stay. That case involved a pro se plaintiff who accused NBC and others of race discrimination for failing to select him as a finalist for a singing competition. *Von Drake*, 2004 WL 1144142 at *1. The court noted that the pro se plaintiff had served discovery seeking information about the 6,000 people who applied for the singing competition, federal tax returns for five years, and copies of felony arrest records for certain individuals. In addition to finding that the defendants had the substantial arguments for dismissal, the court found that many of the discovery requests were overly broad and harassing. *Id.* at *2. The court also noted that the plaintiff was a frequent filer of lawsuits who had been chastised for "attempting to make a mockery of the federal system." *Id.* at n. 2.

Unlike in *Von Drake*, the defendants in this case do not present evidence regarding the breadth of any discovery that is being sought or the burden of responding to that discovery, or any abusive litigation tactics by the plaintiff. As noted in *Stanissis*, district courts often afford plaintiffs an opportunity to cure pleading deficiencies before dismissing a case. 2014 WL 7183942, at *1. Because a stay of discovery is the "exception rather than the rule," Walgreens and American Zurich have not shown good cause to stay all discovery pending resolution of their motions to dismiss.

### IV. CONCLUSION

The State Defendants' motion to stay discovery is **GRANTED**. The motions of Walgreens and American Zurich to stay discovery are **DENIED**.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 11019132

---

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.